## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS B. HENDLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS FOODS, INC., GEORGE E. DEESE, ALLEN L. SHIVER, R. STEVE KINSEY, and KARYL H. LAUDER,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chris B. Hendley ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Flowers Foods, Inc. ("Flower Foods" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Flower Foods; and (c) review of other publicly available information concerning Flower Foods.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Flower Foods securities between February 7, 2013, and August 10, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Flower Foods is a food company that operates two business segments: a direct-store-delivery segment ("DSD Segment") and a warehouse delivery segment ("Warehouse Segment").  The DSD Segment operates 39 bakeries that market a wide variety of fresh bakery foods, including fresh breads, buns, rolls, tortillas, and snack cakes.  These products are sold through a direct-store-delivery model to retail and foodservice customers in the Southeast, Mid-Atlantic, New England, Southwest, California, and select markets in Nevada, the Midwest, and the Pacific Northwest.  The Warehouse Segment operates 10 bakeries that produce snack cakes, breads and rolls for national retail, foodservice, vending, and co-pack customers, which are delivered through customers' warehouse channels and one bakery mix plant.

---

[1] "Defendants" refers collectively to Flower Foods, George E. Deese, Allen L. Shiver, R. Steve Kinsey, and Karyl H. Lauder.

3.      On August 10, 2016, Flower Foods disclosed in a Current Report filed with the SEC that the U.S. Department of Labor notified Flowers Foods that the Company was scheduled for a compliance review under the Fair Labor Standards Act.  The Company further stated that it intended to cooperate with the Department, and that because the review process was confidential, Flower Foods would not comment further at that time.

4.      On this news, Flower Foods' stock price fell $1.60 per share, or 9%, to close at $16.15 per share on August 10, 2016, on unusually heavy trading volume.

5.      After the market closed on August 10, 2016, the Company issued a press release announcing Q2 2016 financial results.  Therein, the Company announced revenue of $935 million, which fell below the Wall Street projection of $949 million.  In the press release, Flower Foods also disclosed that it was lowering its 2016 guidance, stating:

**Revised Fiscal 2016 Guidance**

Due to increased competitive activity and weak category volumes, the company lowered its outlook for fiscal 2016 sales, diluted EPS, and adjusted diluted EPS. Sales are now expected to be in the range of $3.930 billion to $3.986 billion, representing growth of approximately 4.0% to 5.5% over fiscal 2015 reported sales of $3.779 billion. EPS is now expected to be in the range of $0.88 to $0.93, representing a change of approximately -1.1% to +4.5% over fiscal 2015 EPS of $0.89. Adjusted EPS is now expected to be in the range of $0.90 to $0.95, representing a change of approximately -2.2% to +3.3% over fiscal 2015 adjusted EPS of $0.92.

Commenting on the revised guidance, Shiver said, "Our revised guidance takes into consideration soft consumer demand in the bakery category, as well as heightened promotional activity in our industry. The Flowers team has significant experience successfully navigating periods of heightened promotional activity like we are currently seeing, and we have already taken steps to address underperforming markets to improve profitability. Those markets have begun steady improvement, and as sales grow, the company expects to leverage costs and realize efficiencies.

6.      On this news, Flower Foods' stock price fell $1.20 per share, or 7.4%, to close at $14.95 per share on August 11, 2016, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly classifying employees as independent contractors; (2) that the misclassification exposed the Company to legal liability and/or negative regulatory action; (3) that proper classification would have a negative impact on the Company's operations; and (4) that, as a result of the foregoing, Defendants' statements about Flower Foods' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.   In addition, Flower Foods securities are

actively traded in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Chris B. Hendley, as set forth in the accompanying certification, incorporated by reference herein, purchased Flower Foods securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Flower Foods is a Georgia corporation with its principal executive offices located at 1919 Flowers Circle, Thomasville, GA.  Flower Foods' common stock trades on the New York Stock Exchange ("NYSE") under the symbol "FLO."

15.     Defendant George E. Deese ("Deese") was, at all relevant times, the Chief Executive Officer ("CEO") of Flower Foods from prior to the beginning of the Class Period until May 22, 2013.  Deese also served as executive chairman of the board from May 22, 2013 until December 31, 2014, and as non-executive chairman of the board from December 31, 2014 through the end of the Class Period.

16.     Defendant Allen L. Shiver ("Shiver") was, at all relevant times, the Chief Executive Officer ("CEO"), of Flower Foods from May 22, 2013, through the end of the Class Period.

17.     Defendant R. Steve Kinsey ("Kinsey") was, at all relevant times, the Chief Financial Officer ("CFO") of Flower Foods.

18.     Defendant Karyl H. Lauder ("Lauder") was, at all relevant times, the Senior Vice President and Chief Accounting Officer of Flower Foods.

19.     Defendants Deese, Shiver, Kinsey, and Lauder are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Flower Foods' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Flower Foods is a food company that operates two business segments: a direct-store-delivery segment ("DSD Segment") and a warehouse delivery segment ("Warehouse Segment").   The DSD Segment operates 39 bakeries that market a wide variety of fresh bakery foods, including fresh breads, buns, rolls, tortillas, and snack cakes.   These products are sold through a direct-store-delivery model to retail and foodservice customers in the Southeast, Mid-Atlantic, New England, Southwest, California, and select markets in Nevada, the Midwest, and

the Pacific Northwest.  The Warehouse Segment operates 10 bakeries that produce snack cakes, breads and rolls for national retail, foodservice, vending, and co-pack customers, which are delivered through customers' warehouse channels and one bakery mix plant.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     The Class Period begins on February 7, 2013.  On that day, Flower Foods issued a press release entitled, "Flowers Foods Reports Fourth Quarter And Fiscal 2012 Results." Therein, the Company, in relevant part, stated:

THOMASVILLE,   Ga., Feb.   7,   2013 /PRNewswire/   -- Flowers   Foods, Inc. (NYSE:  FLO),  today  reported  results  for  its  12  and  52  weeks ended December 29, 2012. Sales for the quarter increased 14.7% to $749.4 million and for the year sales increased 9.8% to $3.05 billion. Diluted EPS for the quarter was $0.28, up 64.7%. For the year, diluted EPS was up 8.9% to $0.98; adjusted for one-time charges in both years, 2012 diluted EPS was $1.03, up 7.3% compared to $0.96 in 2011. Other highlights include:

- EBITDA margin, excluding one-time charges, was 11.5% for the quarter and 10.9% for the year;

- Operating margin (EBIT), excluding one-time charges, improved to 8.0% in the quarter and was up slightly for the year;

- Gross margin for the quarter and year were 47.9% and 46.9%, respectively;

- Volume increased 10.3% in the quarter and 2.1% for the year;

- Net price/mix for the quarter was negative 2.0% and positive 1.5% for the year;

- Acquisitions contributed 6.4% of the quarter's sales and 6.2% of 2012 total sales;

- The Lepage Bakeries acquisition met expectations for sales and earnings;

- *Nature's Own* brand reached approximately $974 million in annual retail sales and became the nation's best-selling bread brand; and

- Specific guidance for 2013 is delayed pending the outcome of possible acquisitions.  However, the company said results for 2013 are expected to meet or exceed long-term goals, excluding one-time charges.

George E. Deese, Flowers Foods' chairman and chief executive officer, said, "The year 2012 was eventful for Flowers Foods and for our industry. We cycled our acquisition of Tasty Baking in the second quarter, acquired Lepage Bakeries in the third quarter, and announced an agreement to acquire the rights to *Sara Lee* and *Earthgrains* brands in California in the fourth quarter. In mid-November, our industry experienced another major change when Hostess Brands exited the marketplace. Our team rallied to meet the needs of new and existing customers as they felt the impact of Hostess' sudden departure. Our fourth quarter results show the benefit to sales and earnings that resulted from our team's outstanding efforts to serve our customers.

"The marketplace remains in flux as the industry awaits the outcome of Hostess' bankruptcy proceedings and the resulting auctions of assets. We are delaying offering specific guidance for 2013 until we have more clarity regarding the Hostess situation as well as our pending transaction for the *Sara Lee* and *Earthgrains* brands in California," he continued.

"Our team continues to execute well on our operating strategies and we do anticipate that sales and earnings for 2013 will meet or exceed our long-term objectives for 5% to 10% sales growth and double-digit earnings per share growth, excluding one-time charges," Deese said.

On January 11, 2013, the company announced an agreement with Hostess to be the stalking horse bidder in the bankruptcy process for certain Hostess bread bakeries and bread brands. A competitive auction is scheduled for February 28, 2013, followed by a sale order hearing on March 5, 2013. If Flowers' bids are ultimately approved by the court, the transactions will remain subject to regulatory clearance.

In November 2012, Flowers and Grupo Bimbo, S.A.B. de C.V. announced the U. S. Department of Justice had approved an agreement whereby Flowers would acquire certain assets and trademarks from BBU, Bimbo's American subsidiary, primarily the *Sara Lee* and *Earthgrains* brands for sliced breads, buns, and rolls in the state of California. The transaction is set for completion on February 23, 2013 with respect to Southern California followed by a staged roll-out of the acquired brands in the remainder of the state.  On January 29, 2013, Grupo Bimbo filed a motion with the U. S. District Court for the District of Columbia seeking to temporarily suspend the transaction. A hearing on this matter is scheduled for February 13, 2013**.**

**Fourth Quarter 2012 Results**

Fourth quarter sales increased 14.7% to $749.4 million from $653.6 million in last year's fourth quarter. This increase was attributable to volume increases of 10.3%, partially offset by unfavorable net price/mix of 2.0%. Additionally, the Lepage Bakeries acquisition contributed 6.4% to sales. Dollar sales and volume increased across all channels. The largest volume increases were in the branded soft variety,

branded white bread, branded buns and rolls, and foodservice categories.

Net income for the quarter was $38.6 million compared to $23.0 million in the fourth quarter of fiscal 2011. For the quarter, diluted earnings per share were $0.28, an increase of 64.7%, compared to $0.17 in last year's fourth quarter.

Gross margin as a percentage of sales for the quarter was 47.9%, up 200 basis points compared to 45.9% in the fourth quarter of 2011. This increase was due primarily to higher sales volumes and improved manufacturing efficiencies.

For the quarter, selling, distribution, and administrative costs as a percent of sales were 36.5%, compared to 36.8% in the prior year. This decrease as a percent of sales was primarily attributable to our ability to leverage costs on increased sales.

Depreciation and amortization expenses for the quarter remained relatively stable as a percent of sales compared to last year's fourth quarter. Net interest expense was incurred during the quarter due to higher interest expense resulting from the issuance in the first quarter of this year of $400.0 million of senior notes. The majority of the proceeds from the notes were used for the Lepage transaction. The effective tax rate for the quarter was 31.1% compared to 37.7% in last year's fourth quarter. This decrease was primarily due to positive discrete items in this year's fourth quarter.

Operating income, also referred to as earnings before interest and taxes (EBIT), for the fourth quarter was $59.2 million, or 7.9% of sales compared to $36.6 million, or 5.6% of sales in last year's fourth quarter. Earnings before interest, taxes, depreciation, and amortization (EBITDA) for the fourth quarter was $85.1 million, or 11.4% of sales compared $59.6 million, or 9.1% of sales for the fourth quarter of 2011. One-time costs related to acquisitions affected EBIT and EBITDA by $1.1 million, or 10 basis points as a percent of sales in the fourth quarter.

22.    On February 20, 2013, Flower Foods filed its Annual Report with the SEC on Form 10-K for the fiscal year ended December 29, 2012.  The Company's Form 10-K was signed by Defendants Deese, Kinsey, and Lauder, and reaffirmed the Company's financial results announced in the press release issued on February 7, 2013.

23.    On February 6, 2014, Flower Foods issued a press release entitled, "Flowers Foods, Inc. Announces Fiscal 2013 Fourth Quarter and Full Year Results."  Therein, the Company, in relevant part, stated:

THOMASVILLE, Ga., Feb. 6, 2014 /PRNewswire/ -- Flowers Foods, Inc. (NYSE: FLO), the second-largest producer and marketer of fresh packaged bakery foods in the United States, today reported results for the fourth quarter and fiscal year ended December 28, 2013.

**Executive Summary**

| | For the 12 Weeks Ended | | | For the 52 Weeks Ended | | |
|---|---|---|---|---|---|---|
| | 12/28/13 | 12/29/12 | % Increase (Decrease) | 12/28/13 | 12/29/12 | % Increase (Decrease) |
| | | | *(Dollars in millions, except per share data)* | | | |
| Sales | $ 843.6 | $ 749.4 | 12.6 % | $ 3,751.0 | $ 3,046.5 | 23.1 % |
| Adjusted income from operations (EBIT) | $ 57.6 | $ 60.3 | (4.4) % | $ 302.9 | $ 228.1 | 32.8 % |
| % of sales | 6.8% | 8.0% | | 8.1% | 7.5% | |
| Adjusted net income | $ 38.8 | $ 38.6 | 0.5 % | $ 192.3 | $ 142.4 | 35.1 % |
| % of sales | 4.6% | 5.2% | | 5.1% | 4.7% | |
| Adjusted net income per diluted share | $ 0.18 | $ 0.18 | 0.0 % | $ 0.91 | $ 0.69 | 31.9 % |

*Percentages may not compute due to rounding.*

*Note: See reconciliation of non-GAAP measures in the financial statements following this release.*

**<u>Fourth Quarter Highlights</u>**

- Fourth quarter sales increased 12.6% in 2013, compared to 2012, reflecting increased volume of 6.3%, positive net price/mix of 3.6%, and an acquisition contribution of 2.7%.

- Adjusted income from operations (EBIT) was 6.8% of sales, down 4.4% from last year, due primarily to acquisition carrying costs.

- Adjusted net income for the quarter was $38.8 million, or $0.18 per diluted share, including the negative impact of $0.02 per share of acquisition carrying costs and interest expense.

- EBITDA margin for the quarter was 10.2%.

- Generated $50.2 million in cash flow from operations.

- Opened bakery in Henderson, Nevada to help provide production for the California market.

- Sales of the reintroduced Hostess bread brands *Wonder*, *Home Pride*, *Merita*, and *Butternut* were approximately $22.8 million in the quarter.

**Fiscal 2013 Highlights**

- Record sales of $3.751 billion, an increase of 23.1%, reflecting increased volume of 16.8%, acquisitions contribution of 6.2%, and positive net price/mix of 0.1%.

- Adjusted EBIT was 8.1% of sales, reflecting a 32.8% increase. Including the benefit/costs of the bargain purchase accounting gain and acquisition-related costs, operating income was 8.9% of sales, a 53.4% increase over last year.

- Adjusted net income for the year was $192.3 million, or $0.91 per diluted share, an increase of 31.9%.

- EBITDA margin for the year was 11.2%, excluding a bargain purchase accounting gain and acquisition-related costs.

- Generated $270.5 million in cash flow from operations during the year.

- Acquired the rights to *Sara Lee* brand breads, rolls, and buns in California in February 2013; acquired 20 closed bakeries, 36 depots, and the *Wonder*, *Home Pride*, *Merita*, *Butternut,* and *Nature's Pride* brands in July 2013; acquired an operating bakery in Modesto, California in July 2013.

- *Nature's Own* brand reached approximately $1.1 billion in annual retail sales. *Nature's Own* sales increased 17.2% in the fiscal year.

- *Tastykake* brand reached approximately $425.0 million in annual retail sales, achieving a 46.2% increase in sales during the year.

- New market growth exceeded the company's stated goal of one-half to one percent contribution to sales and the company's fresh baked foods brands are now available to 79% of the U.S. population.

**2014 Guidance**

- Issued 2014 guidance for sales of $3.976 billion to $4.126 billion, reflecting an increase of 6.0% to 10.0%, and earnings per share of $0.98 to $1.05, reflecting growth of 7.7% to 15.4%, compared to adjusted EPS reported for 2013.

Allen L. Shiver, president and chief executive officer, said, "In the fourth quarter, we achieved improved production efficiencies compared to the third quarter, performed well in our new markets, and continued to integrate our recent acquisitions. Second half earnings, however, were impacted by carrying costs, interest charges related to acquisitions, and integration costs. These costs will decline over time as we open bakeries, determine the optimal long-term use of the former Hostess assets and reduce debt. The direct-store-delivery (DSD) segment continued to perform well in the second half as it began to roll out our acquired brands and continued to build our customer base. The warehouse segment's

results came in below expectations in the second half due to certain short-term issues that were previously discussed. However, by the end of the year, those issues were improved, and we expect continued improvement in the current quarter.

"2013 was a year in which Flowers Foods marked several milestones, both financial and strategic. We achieved 23.1% sales growth in the year and delivered earnings growth of 31.9%, in line with our guidance. The company was well positioned to benefit from significant and sustainable volume increases as we served customers throughout our DSD territory following Hostess' exit from the market in mid-November 2012. We believe our February 2013 acquisition of the rights to the *Sara Lee* brand in California and our July 2013 acquisition of the former Hostess assets and bread brands further enhance our ability to continue to grow sales and earnings over time. Additionally, our bakeries have increased production utilization and added sales territories to accommodate the volume we gained and to support our ongoing growth.

"During the year, we surpassed the goal we set for 2016 of having our fresh bakery brands available to at least 75% of the U.S. population as we extended our DSD service area to Northern California and certain other population centers. Roughly half of our DSD territory serves populations relatively new to Flowers and those markets offer substantial growth potential over the next few years as our brands gain greater consumer acceptance. Furthermore, our *Nature's Own* brand surpassed $1.1 billion in sales at retail in 2013 and our *Tastykake* brand reached $425 million in sales at retail, reflecting the strength of our brands. We also continue to strengthen our brand portfolio, particularly in new markets, as we progress with the reintroduction of *Wonder*, *Home Pride*, *Merita*, and *Butternut* across our DSD territories.

"Across the company, our team members and partners put forth extraordinary efforts in 2013 as we took advantage of significant growth opportunities. As we begin 2014, we are keenly focused on capitalizing on opportunities to use our newly acquired assets to continue to increase sales and grow earnings. As our 2014 guidance indicates, we remain confident in our ability to execute upon our growth strategy and continue to create value for our shareholders."

24.     On February 19, 2014, Flower Foods filed its Annual Report with the SEC on Form 10-K for the fiscal year ended December 28, 2013.  The Company's Form 10-K was signed by Defendants Shiver, Kinsey, and Lauder, and reaffirmed the Company's financial results announced in the press release issued on February 6, 2014.

25.     On February 12, 2015, Flower Foods issued a press release entitled, "Flowers Foods, Inc. Announces Results for the Fourth Quarter & Full Year 2014."  Therein, the

Company, in relevant part, stated:

THOMASVILLE, Ga., Feb. 12, 2015 /PRNewswire/ -- Flowers Foods, Inc. (NYSE: FLO), the nation's second-largest producer and marketer of fresh packaged bakery foods, today reported results for its 13-week fourth quarter and 53-week fiscal year ended January 3, 2015.

### Summary

| | For the 13 Week Period Ended 1/3/15 | For the 12 Week Period Ended 12/28/13 | % Chg. | For the 53 Week Period Ended 1/3/15 | For the 52 Week Period Ended 12/28/13 | % Chg. |
|---|---|---|---|---|---|---|
| | *(Dollars in millions, except per share data)* | | | | | |
| Sales* | $877.3 | $840.0 | 4.4% | $3,749.0 | $3,732.6 | 0.4% |
| Adjusted operating income (EBIT)** | $62.6 | $57.6 | 8.8% | $300.1 | $302.9 | (0.9)% |
| % of sales | 7.1% | 6.9% | | 8.0% | 8.1% | |
| Adjusted net income** | $41.7 | $38.8 | 7.3% | $192.1 | $192.3 | (0.1)% |
| % of sales | 4.7% | 4.6% | | 5.1% | 5.2% | |
| Adjusted net income per diluted share** | $0.20 | $0.18 | 11.1% | $0.90 | $0.91 | (1.1)% |

*Percentages may not compute due to rounding.*
*\* Prior period sales have been revised. See explanation below.*
*\*\* See reconciliation of non-GAAP measures in the financial statements following this release.*

### Fourth Quarter Highlights

- For the 13-week fourth quarter of fiscal 2014, sales increased 4.4% compared to the 12-week fourth quarter last year. This increase reflected the impact of the additional week, which increased sales by 7.5%, negative net price/mix of 0.5%, and decreased volume of 2.6%.

- Adjusted earnings before income taxes, depreciation, and amortization (EBITDA) for the quarter improved to 10.6% of sales as compared to 10.3% of sales during last year's fourth quarter.

- Sales of the acquired bread brands – *Wonder*, *Home Pride*, *Merita*, and *Butternut* – continued to grow sequentially, driving sales in our expansion markets, which contributed 1.6% to overall sales growth during the quarter (1.1% excluding week 53).

- During the quarter, the company: (i) recognized a previously announced pension settlement charge of $15.4 million, or $0.05 per diluted share; (ii) revised net sales due to the classification of certain immaterial discounts; and (iii) recorded an asset impairment charge of $5.8 million or $0.02 per diluted share, related to the sale of certain acquired Hostess bread assets. The pension settlement charge and the asset impairment are excluded from the discussion that follows. Reconciliations of non-GAAP measures are included in the financial schedules at the end of this release.

- The company generated $93.7 million of cash flow from operations, paid down debt by $51.1 million, and repurchased 1,000,000 shares of common stock for$19.1 million during the fourth quarter.

- The company's board of directors increased the annual dividend rate by 10.4%, to $0.53 per share. Additionally, the board increased the company's share repurchase authorization by 7.1 million shares to 74.6 million shares. At the end of the fiscal year, there were 14.0 million shares remaining under the increased authorization.

**Fiscal 2014 Highlights**

- For the 53-week fiscal 2014, sales increased 0.4% compared to the 52-week prior year. This increase reflected positive net price/mix of 1.1%, decreased volume of 2.8%, contribution of 0.4% from the *Sara Lee* California acquisition, and the impact of the 53rd week, which increased sales by 1.7%.

- *Nature's Own* posted estimated retail sales of $1.1 billion during fiscal 2014.

- Adjusted EBITDA for the year improved to 11.4% of sales as compared to 11.3% of sales in the prior year.

- For the full year, expansion market growth increased total sales by 2.1% (2.0% excluding week 53).

- During the year, the company paid down debt by $167.9 million, paid dividends totaling $102.3 million, and repurchased 2,014,610 shares of common stock for$38.9 million.

**2015 Guidance**

- For the 52-week fiscal 2015, the company issued guidance for sales of $3.786 billion to $3.861 billion and earnings per share of $0.96 to $1.01.

Allen L. Shiver, president and chief executive officer, said, "The gross margin expansion we've achieved is evidence of the effort put forth by the team to improve efficiencies throughout the company, grow sales in our expansion markets, and lower input costs. Going forward, we remain committed to growing sales and earnings as we offer exceptional service to our customers, enhance the quality of our products, and innovate to provide fresh bakery foods with the qualities today's consumer desires.

"In our DSD Segment this quarter, excluding the effect of week 53, we saw strong results from *Wonder* and our other branded white breads, as well as volume growth and improved pricing in our DSD foodservice business. However, overall

sales declined primarily due to declines in store branded business and competitive pressure on our cake brands.

"In our Warehouse Segment this quarter, excluding the effect of week 53, we experienced lower cake volume due to competition in the market. The divestiture of ourFort Worth, Texas foodservice tortilla operation also contributed to the sales decline during the quarter.

"Adjusted earnings for the quarter grew when compared to the year ago quarter, excluding the effect of week 53. The team has worked hard this year to right-size the business and improve manufacturing efficiencies and we are confident these efforts will drive our ability to deliver on our fiscal 2015 commitments," Shiver said.

26.     On February 25, 2015, Flower Foods filed its Annual Report with the SEC on Form 10-K for the fiscal year ended January 3, 2015.  The Company's Form 10-K was signed by Defendants Shiver, Kinsey, and Lauder, and reaffirmed the Company's financial results announced in the press release issued on February 12, 2015.

27.     On February 10, 2016, Flower Foods issued a press release entitled, "Flowers Foods, Inc. Reports Fourth Quarter and Full Year 2015 Results."  Therein, the Company, in relevant part, stated:

THOMASVILLE,   Ga., Feb.   10,   2016 /PRNewswire/   -- Flowers   Foods, Inc. (NYSE:  FLO),  producer  of *Nature's  Own*, *Wonder*,*Tastykake*,  and  other bakery foods, today reported financial results for the company's fourth quarter and year ended January 2, 2016 and provided guidance for fiscal 2016.

Reported results reflect that the fourth quarter of fiscal 2014 was a 13-week quarter and fiscal 2014 was a 53-week year. The fourth quarter of fiscal 2015 was a 12-week quarter and fiscal 2015 was a 52-week year. The company's fiscal 2016 will also be a 52-week year.

*Note: Summary information below has been adjusted for the following items that affect comparability to prior periods: asset impairments, divestitures, pension plan settlement loss, and acquisition-related costs. Please see non-GAAP reconciliations in the tables at the end of this release.*

**Fiscal 2015 Summary:**

*Compared to the prior fiscal year -*

- Sales increased 0.8% to $3.779 billion.

- Excluding acquisitions and the extra week last year, sales increased 1.2%.

- Adjusted for items affecting comparability, net income per diluted common share (EPS) increased 2.2% to $0.92.

- Adjusted for items affecting comparability, earnings before interest, taxes, depreciation and amortization (EBITDA) increased 2.7% to $440.7 million.

- Dividend increased 17.0% to $0.5675 per share.

**Fourth Quarter Summary:**

*Compared to the prior year fourth quarter -*

- Sales decreased 2.2% to $858.4 million.

- Excluding acquisitions and the extra week last year, sales increased 0.5%.

- Adjusted for items affecting comparability, EPS decreased 20.0% to $0.16.

- Adjusted for items affecting comparability, EBITDA decreased 6.7% to $86.7 million.

- Dividend increased 9.4% to $0.145 per share.

**For 52-week Fiscal 2016, the Company Expects:**

- Sales in the range of $3.986 billion to $4.080 billion, representing growth of approximately 5.5% to 8.0% over fiscal 2015 reported sales of $3.779 billion.

- EPS in the range of $0.98 to $1.04, representing growth of approximately 6.5% to 13.0% over fiscal 2015 adjusted EPS of $0.92.

President and CEO Allen Shiver said, "We are not satisfied with our performance in the fourth quarter. Even so, for the full year we delivered record adjusted EPS and we took important steps to position Flowers for opportunities in 2016 and beyond.

"While we continued to make significant progress on our strategic initiatives, our earnings in the fourth quarter were impacted by sales that were below plan. In line with channel data for the total store, the pace of Flowers' retail sales in the fourth quarter slowed relative to trends we observed in the first three quarters. Due to the lower than anticipated sales, our earnings for the quarter were negatively impacted by approximately $0.03 per share. Additionally, certain costs originally planned for the first quarter of 2016 were incurred in the fourth quarter of 2015,

impacting EPS by $0.01.

"It would be a mistake not to recognize the team's accomplishments during the year on several initiatives integral to Flowers' long-term strategy to grow in underdeveloped categories and geographies.

"First, with our acquisitions of *Dave's Killer Bread* and *Alpine Valley Bread*, we grew Flowers' share in the fast-growing organic segment of the specialty premium category, extended our geographic reach, and broadened our retailer relationships.

"Second, our investments in growth, including the successful opening of our bakery in Lenexa, Kan., enhanced our ability to serve the Midwest with Flowers' strong brands and position us to sustain our expansion market growth.

"Third, to keep up with the ever-changing consumer landscape, we have not only offered new items, such as our *Cobblestone Bread Company* "Right Sized" breads, but also carefully evaluated our product assortment, improving our merchandising and promotional strategies. We remain focused on trade promotion effectiveness and efficiency," Shiver said.

In fiscal 2015, Flowers generated operating cash flow of $327.3 million, which we used to make capital expenditures of $93.8 million, make debt repayments of $143.2 million (excluding withdrawals for recently completed acquisitions), increase our dividend per share by 17.0% year-over-year, and repurchase 0.3 million shares for $6.9 million.

Shiver concluded, "While we did not meet our fourth quarter objectives, fiscal 2015 was a strong year for Flowers. Looking ahead, recently completed acquisitions, which are a core part of our growth strategy, are expected to contribute between 5.2% and 5.7% to sales growth in 2016. And with our strong brands we are working to grow share in expansion markets while remaining a low-cost producer. The team remains keenly focused on executing our growth strategies and delivering shareholder value."

28.     On February 24, 2016, Flower Foods filed its Annual Report with the SEC on Form 10-K for the fiscal year ended January 2, 2016. The Company's Form 10-K was signed by Defendants Shiver, Kinsey, and Lauder, and reaffirmed the Company's financial results announced in the press release issued on February 10, 2016.

29.     On May 18, 2016, Flower Foods issued a press release entitled, "Flowers Foods, Inc. Reports First Quarter 2016 Results." Therein, the Company, in relevant part, stated:

THOMASVILLE, Ga., May 18, 2016 /PRNewswire/ -- Flowers Foods,

Inc. (NYSE: FLO), producer of *Nature's Own*, *Wonder*, *Tastykake*, and other bakery foods, today reported financial results for the company's 16-week first quarter ended April 23, 2016.

**First Quarter Summary:**

*Compared to the prior year first quarter*

- Sales increased 5.1% to $1.204 billion. Acquisitions of *Dave's Killer Bread* (DKB) and *Alpine Valley Bread* (Alpine) contributed 5.3% to the overall sales increase.

- Achieved EPS of $0.28.

- Costs associated with the conversion of the Tuscaloosa, Ala. bakery to organic production were $2.5 million, or approximately $0.01 per share.

- EBITDA[(1)] increased 1.7% to $138.6 million.

- Quarterly dividends increased 9.4% to $0.145 per share.

- The company repurchased 5.6 million shares under the previously announced $120 million Accelerated Stock Repurchase (ASR) agreement.

*(1) Earnings before Interest, Taxes, Depreciation and Amortization. See reconciliations of non-GAAP measures in the financial statements following this release.*

**Guidance for Fiscal 2016 Updated for ASR:**

- Sales in the range of $3.986 billion to $4.080 billion, representing growth of approximately 5.5% to 8.0% over fiscal 2015 reported sales of $3.779 billion.

- EPS range of $1.00 to $1.06, including approximately $0.02 of accretion from the ASR, representing growth of approximately 8.7% to 15.2% over fiscal 2015 adjusted EPS of $0.92.

30.    Also on May 18, 2016, Flower Foods filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended April 23, 2016. The Company's Form 10-Q was signed by Defendants Shiver, Kinsey, and Lauder, and reaffirmed the Company's financial results announced in the press release issued on the same day.

31.    The above statements contained in ¶¶21-30 were materially false and/or

misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly classifying employees as independent contractors; (2) that the misclassification exposed the Company to legal liability and/or negative regulatory action; (3) that proper classification would have a negative impact on the Company's operations; and (4) that, as a result of the foregoing, Defendants' statements about Flower Foods' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

32.     On August 10, 2016, Flower Foods disclosed in a Current Report filed with the SEC that the U.S. Department of Labor notified Flowers Foods that the Company was scheduled for a compliance review under the Fair Labor Standards Act.  The Company further stated that it intended to cooperate with the Department, and that because the review process was confidential, Flower Foods would not comment further at that time.

33.     On this news, Flower Foods' stock price fell $1.60 per share, or 9%, to close at $16.15 per share on August 10, 2016, on unusually heavy trading volume.

34.     After the market closed on August 10, 2016, the Company issued a press release announcing Q2 2016 financial results.  Therein, the Company announced revenue of $935 million, which fell below the Wall Street projection of $949 million.  In the press release, Flower Foods also disclosed that it was lowering its 2016 guidance, stating:

### Revised Fiscal 2016 Guidance

Due to increased competitive activity and weak category volumes, the company lowered its outlook for fiscal 2016 sales, diluted EPS, and adjusted diluted EPS. Sales are now expected to be in the range of $3.930 billion to $3.986 billion, representing growth of approximately 4.0% to 5.5% over fiscal 2015 reported

sales of $3.779 billion. EPS is now expected to be in the range of $0.88 to $0.93, representing a change of approximately -1.1% to +4.5% over fiscal 2015 EPS of $0.89. Adjusted EPS is now expected to be in the range of $0.90 to $0.95, representing a change of approximately -2.2% to +3.3% over fiscal 2015 adjusted EPS of $0.92.

Commenting on the revised guidance, Shiver said, "Our revised guidance takes into consideration soft consumer demand in the bakery category, as well as heightened promotional activity in our industry. The Flowers team has significant experience successfully navigating periods of heightened promotional activity like we are currently seeing, and we have already taken steps to address underperforming markets to improve profitability. Those markets have begun steady improvement, and as sales grow, the company expects to leverage costs and realize efficiencies.

35.     On this news, Flower Foods' stock price fell $1.20 per share, or 7.4%, to close at $14.95 per share on August 11, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Flower Foods securities between February 7, 2013, and August 10, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Flower Foods' common stock actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Flower Foods shares were traded publicly during the Class Period on the NYSE.  As of August 5, 2016, Flower Foods had

206,870,338 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Flower Foods or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Flower Foods; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

42.     The market for Flower Foods' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Flower Foods' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Flower Foods' securities relying upon the integrity of the market price of the Company's securities and market information relating to Flower Foods, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Flower Foods' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Flower Foods' business, operations, and prospects as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Flower Foods' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects,

thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

45. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46. During the Class Period, Plaintiff and the Class purchased Flower Foods' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Flower Foods, his/her control over, and/or receipt and/or modification of Flower Foods' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to

confidential proprietary information concerning Flower Foods, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

48.     The market for Flower Foods' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Flower Foods' securities traded at artificially inflated prices during the Class Period.  On October 29, 2015, the Company's stock price closed at a Class Period adjusted high of $26.46 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Flower Foods' securities and market information relating to Flower Foods, and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Flower Foods' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Flower Foods' business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Flower Foods and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50.     At all relevant times, the market for Flower Foods' securities was an efficient market for the following reasons, among others:

(a)     Flower Foods stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Flower Foods filed periodic public reports with the SEC and/or the NYSE;

(c)     Flower Foods regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Flower Foods was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.     As a result of the foregoing, the market for Flower Foods' securities promptly digested current information regarding Flower Foods from all publicly available sources and reflected such information in Flower Foods' stock price. Under these circumstances, all purchasers of Flower Foods' securities during the Class Period suffered similar injury through their purchase of Flower Foods' securities at artificially inflated prices and a presumption of reliance applies.

52.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose

material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

53.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Flower Foods who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

54.      Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

55.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Flower Foods' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

56.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Flower Foods' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Flower Foods' financial well-being and prospects, as specified herein.

58.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Flower Foods' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state

material facts necessary in order to make the statements made about Flower Foods and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

59.      Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

60.      The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Flower Foods' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.      As

demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Flower Foods' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Flower Foods' securities during the Class Period at artificially high prices and were damaged thereby.

62.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Flower Foods was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Flower Foods securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63.     By virtue of the foregoing, Defendants have violated Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Flower Foods within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same.

68.     As set forth above, Flower Foods and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  August 12, 2016                    **GLANCY PRONGAY & MURRAY LLP**


                                           By: *s/ Lesley F. Portnoy*
                                           Lesley F. Portnoy (LP-1941)
                                           122 East 42nd Street, Suite 2920
                                           New York, New York 10168
                                           Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
                                           lportnoy@glancylaw.com

                                           Lionel Z. Glancy
                                           Robert V. Prongay
                                           Casey E. Sadler
                                           Charles H. Linehan
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone:  (310) 201-9150
                                           Facsimile:   (310) 201-9160

                                           *Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## FLOWERS FOODS, INC. SECURITIES LITIGATION

I, Chris B. Hendley, individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.   I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.   I did not purchase **FLOWERS FOODS, INC.,** the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in **FLOWERS FOODS, INC.** during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5.   I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/11/2016
_____
Date

DocuSigned by:

*Chris B. Hendley*
648D993BFEB64BA...
Chris B. Hendley

**Chris Hendley's Transactions in Flowers Foods, Inc. (FLO)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 07/26/2016 | Bought | 1,500 | $18.9163 |
| 07/27/2016 | Bought | 1,500 | $18.3799 |